IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**GDI ADVENTURA DEVELOPMENT, LLC,**

        Appellant,

v.                                        Civil Action No. 3:24-cv-225

**PIER 1 IMPORTS, INC.,**

        Appellee.

## MEMORANDUM OPINION

This matter comes before the Court on GDI Adventura Development, LLC's ("GDI" or "Appellant") appeal from the March 11, 2024 Memorandum Opinion and Order of the Honorable Kevin R. Huennekens, United States Bankruptcy Court Judge, denying GDI's Motion for Relief from Order Granting Omnibus Objection ("Rule 60 Motion"). (ECF No. 1, at 1; ECF Nos. 2-20; 2-24.) GDI filed an opening brief, (ECF No. 5), Pier 1 Imports, Inc. ("Pier 1" or "Appellee") filed a response brief, (ECF No. 7), and GDI replied, (ECF No. 8). The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. Accordingly, this matter is ripe for disposition. The Court exercises jurisdiction pursuant to 28 U.S.C. § 158(a)(1).[1] For the reasons that follow, the Court will affirm the judgment of the Bankruptcy Court.

---

[1] "The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under [28 U.S.C. § 157] . . . ." 28 U.S.C. § 158(a)(1).

## I. Factual and Procedural Background

As found by the Bankruptcy Court, the uncontested facts are as follows. (*See* ECF No. 2-24, at 2–5.)

Prior to the filing of these jointly administered bankruptcy cases, one of the Debtors, Pier 1, entered into a commercial lease agreement (the "Lease") on or about February 26, 1999, with Henning/Trion Ventures I, Ltd., the predecessor-in-interest to GDI. (ECF No. 2-22, ¶ 1.) Under the terms of the Lease, Pier 1 agreed to pay monthly rent and other charges in exchange for the use of premises located in Aventura, Florida. (ECF No. 2-22, ¶ 1.)

On February 17, 2020, the Debtors, including Pier 1, filed voluntary petitions under Chapter 11 of Title 11 of the Bankruptcy Code. (ECF No. 2-22, ¶ 2.) The Bankruptcy Court entered an order authorizing and directing Epiq Corporate Restructuring, LLC ("Epiq") to perform noticing services and to receive, maintain, record, and otherwise administer the proofs of claim in these bankruptcy cases. (ECF No. 2-22, ¶ 3.) The Debtors were able to confirm a plan, which became effective on October 9, 2020. (ECF No. 2-6; ECF No. 2-22, ¶ 5.)

Post-confirmation, on September 4, 2020, the Debtors filed a Notice of Rejection of Certain Executory Contracts and/or Unexpired Leases, whereby the Debtors sought to reject the Lease. (ECF No. 2-7; ECF No. 2-22, ¶ 7.) No objection was received in connection therewith and the effective date of the rejection of the Lease was September 25, 2020. (ECF No. 2-22, ¶ 7.)

On October 23, 2020, GDI through its agent, Savitar Realty Advisors ("Savitar"), timely filed[2] a proof of claim (the "Claim") for a general unsecured claim in the amount of $461,698.96

---

[2] On March 13, 2020, the Bankruptcy Court entered an Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving

2

for damages allegedly resulting from the rejection of the Lease. (ECF No. 2-22, ¶ 8.) The Claim was signed by Clifford Stein, the President of Savitar, and further provided that all notices to GDI should be sent to GDI care of "Savitar Realty Advisors, 5345 Pine Tree Drive, Miami Beach, FL 33140" (the "Service Address"). (ECF No. 2-22, at 9–10.) Between September 18, 2020, through January 14, 2021, Mr. Stein communicated with counsel for the Reorganized Debtors with respect to the Claim. (ECF No. 2-22, ¶ 10.) In January 2021, Mr. Stein requested counsel for the Reorganized Debtors provide a status update on the Claim. (ECF No. 2-22, at 26.) The Reorganized Debtors, by their plan administrator, stated via email that, "[m]ost of the claim you filed was unsecured for which we expect no distribution." (ECF No. 2-22, at 25.) Communications between the Reorganized Debtors and Mr. Stein then ceased. (ECF No. 2-24, at 3.)

Just over two years later, on April 25, 2023, the Reorganized Debtors filed the Reorganized Debtors' Twentieth Omnibus Objection to Certain (A) No Liability Claims, (B) Duplicate Claims, (C) Insufficient Documentation Claims, (D) Late Filed Claims, (E) Amended Claims, (F) Reduced Claims, and (G) Satisfied Claims (the "Claim Objection") (ECF No. 2-9), which sought to reduce the Claim to zero dollars. (ECF No. 2-22, ¶¶ 11–12.) Epiq served the

---

the Form of and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, (IV) Approving Notice of Bar Dates, and (V) Granting Related Relief. (ECF No. 2-3.) Among other things, this Order set a deadline for the filing of proofs of claim based on damages incurred from the rejection of executory contracts and unexpired leases on the

> later of (i) the General Claims Bar Date [of April 17, 2020 at 4:00 p.m.] . . . and (ii) 4:00 p.m., prevailing Eastern time, on the date that is 30 days after the later of (A) entry of an order approving the rejection of any executory contract or unexpired lease of the Debtors or (B) the effective date of a rejection of any executory contract or unexpired lease of the Debtors pursuant to operation of any Court order.

(ECF No. 2-3, at 3–4.)

3

Claim Objection on GDI at the Service Address. (ECF No. 2-10, at 1; ECF No. 2-22, ¶ 13.) Neither GDI nor Savitar filed a response to the Claim Objection. (ECF No. 2-22, ¶ 14.) Accordingly, on June 22, 2023, the Court entered the Order Granting Reorganized Debtors' Twentieth Omnibus Objection to Certain (A) No Liability Claims, (B) Duplicate Claims, (C) Insufficient Documentation Claims, (D) Late Filed Claims, (E) Amended Claims, (F) Reduced Claims, and (G) Satisfied Claims [ECF No. 1585] (the "Order Granting Claim Objection"), sustaining the Claim Objection and reducing the Claim to $0. (ECF No. 2-22, ¶¶ 15, 23.) Epiq served a copy of the Order Granting Claim Objection on GDI at the Service Address. (ECF No. 2-13, at 1; ECF No. 2-22, ¶ 16.) Prior to the filing of the Rule 60 Motion, neither GDI nor Savitar filed a response or motion in connection with the Order Granting Claim Objection. (ECF No. 2-22, ¶ 17.)

On September 13, 2023, the Reorganized Debtors filed the Notice of Allowed General Unsecured Claims. (ECF No. 2-14; ECF No. 2-22, ¶ 18.)[3] Epiq served a customized version of the Notice of Allowed Claims,[4] as well as a Resolved Claims Notice,[5] on GDI at the Service Address. (ECF No. 2-15; ECF No. 2-22, ¶¶ 19, 21.) The Resolved Claims Notice provided that the Claim had been adjusted in some fashion and to refer to the Notice of Allowed Claims to

---

[3] The Notice of Allowed Claims not only provided claimants with notice of the allowed amount of their general unsecured claim, but it also offered claimants a 14-day opportunity to notify counsel for the Reorganized Debtors if they did not believe the amount of a Claimants' unsecured claim was accurately reflected prior to the commencement of any interim or final distributions by the Reorganized Debtors. (ECF No. 2-14, at 3.)

[4] The parties attached to the Stipulation as Exhibit C a copy of the customized version of Notice of Allowed Claims that was mailed to GDI on September 25, 2023. (ECF No. 2-22, ¶ 19; ECF No. 2-22, at 30–38.)

[5] The parties attached to the Stipulation as Exhibit D a copy of the Resolved Claims Notice that was mailed to GDI on September 25, 2023. (ECF No. 2-22, ¶ 21; ECF No. 2-22, at 39–43.)

4

determine if any portion of the Claim was allowed. (ECF No. 2-22, at 43.) In turn, the customized version of the Notice of Allowed Claims provided that the Claim was allowed in the amount of $0.00. (ECF No. 2-22, at 37.)

Although Epiq mailed via first-class mail, postage prepaid, (1) the Claim Objection; (2) the Order Granting Claim Objection; (3) the Notice of Allowed Claims; and (4) the Resolved Claims Notice to GDI's Service Address as provided in the Claim, GDI alleges Savitar did not receive any of the foregoing documents. (ECF No. 2-22, ¶¶ 13, 16, 19, 21, 26.)

GDI alleges that on November 13, 2023, Mr. Stein received an email inquiry from an unrelated third party concerning the potential purchase of the Claim. (ECF No. 2-19, at 30.) This prompted Mr. Stein to contact counsel for the Reorganized Debtors on November 14, 2023—thirty-fourth months after the prior email communication—for an update on any proposed distribution to general unsecured creditors. (ECF No. 2-19, at 33; ECF No. 2-22, at 25.) The Reorganized Debtors communicated that an interim distribution of 8-9% may be forthcoming to general unsecured creditors with a valid claim. (ECF No. 2-19, at 32.) But because the GDI claim was reduced to zero dollars, there would be no distribution at all to GDI. (ECF No. 2-19, at 35.) "Starting on December 14, 2023, the Reorganized Debtors began the process of making interim distributions to holders of allowed general unsecured claims." (ECF No. 2-22, ¶ 25.)

On January 31, 2024, GDI filed the Rule 60 Motion. (ECF No. 2-18.) Until the filing of the Rule 60 Motion, "[n]either Savitar, GDI, nor any party on their behalf filed a notice of appearance in connection with the above-referenced bankruptcy proceeding." (ECF No. 2-22, ¶ 27.) At no point prior to the filing of the Motion did Savitar, GDI, or any party on their behalf subscribe for free electronic docket alerts provided by Epiq. (ECF No. 2-22, ¶ 28.)

5

On February 21, 2024, the Bankruptcy Court held a hearing on GDI's Rule 60 Motion. (*See* ECF No. 2-21, at 1–2.) On March 11, 2024, the Bankruptcy Court issued the Memorandum Opinion and Order denying GDI's Rule 60 Motion. (ECF Nos. 2-20; 2-24.) On March 25, 2024,[6] GDI appealed the Bankruptcy Court's denial of its Rule 60 Motion to this Court, initiating this case. (ECF No. 1, at 1.)

## II. Standard of Review

Final orders of a bankruptcy court are appealable to a district court pursuant to 28 U.S.C. § 158(a). "When reviewing a decision of the bankruptcy court, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal." *Paramount Home Entm't Inc. v. Circuit City Stores, Inc.*, 445 B.R. 521, 526–27 (E.D. Va. 2010) (citing *Webb v. Reserve Life Ins. (In re Webb)*, 954 F.2d 1102, 1103–04 (5th Cir. 1992)). "An abuse of discretion standard applies in the review of the Bankruptcy Court's denial of a Rule 60(b) motion." *Herrick v. Cohen*, No. RDB-11-0025, 2011 WL 2420334, at *3 (D. Md. June 13, 2011); *see also Nat'l Org. for Women v. Operation Rescue*, 47 F.3d 667, 669 (4th Cir. 1995) ("The power of a district court to vacate a judgment under Federal Rule of Civil Procedure 60(b) rests within the district court's equitable powers, and its decision will not be disturbed on appeal absent a showing of an abuse of discretion.")

The district court reviews the bankruptcy court's legal conclusions *de novo* and its factual findings for clear error. *Stancill v. Harford Sands, Inc. (In re Harford Sands Inc.)*, 372 F.3d 637, 639 (4th Cir. 2004). A finding of fact is clearly erroneous if a court reviewing it, considering all of the evidence, "is left with the definite and firm conviction that a mistake has been

---

[6] Although the Notice of Appeal was not docketed with this Court until March 27, 2024, it was filed on March 25, 2024.

committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)); *accord Educ. Credit Mgmt. Corp. v. Mosko (In re Mosko)*, 515 F.3d 319, 324 (4th Cir. 2008) (quoting *United States Gypsum Co.*, 333 U.S. at 395). "Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574. In cases where the issues present mixed questions of law and fact, the Court will apply the clearly erroneous standard to the factual portion of the inquiry and *de novo* review to the legal conclusions derived from those facts. *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond*, 80 F.3d 895, 905 (4th Cir. 1996).

### III. Analysis

GDI seeks to appeal three issues:

> (1) "Whether the Bankruptcy Court erred in finding that GDI's actions did not constitute neglect" when finding that their lack of continued participation in the case was a deliberate business decision;
>
> (2) "Whether", even presuming neglect, "the Bankruptcy Court erred in finding that GDI's neglect was not excusable"; and,
>
> (3) "Whether the Bankruptcy Court erred in finding that the Reorganized Debtors had a valid objection to GDI's claim."

(ECF No. 5, at 4.)

This Court need not consider GDI's third issue on appeal—whether the Bankruptcy Court erred in finding that Pier 1 had a valid objection to GDI's claim. As the Bankruptcy Court acknowledged, because "GDI failed to meet the standard of [Federal Rule of Civil Procedure] 60, the [Bankruptcy] Court need not address the merits of the Claim Objection." (ECF No. 2-24, at 13.) Therefore, this Court declines to address GDI's third issue for appeal.

Because the Bankruptcy Court did not abuse its discretion or commit error when finding that GDI did not demonstrate excusable neglect, this Court will affirm the decision of the Bankruptcy Court in its Memorandum Opinion and Order Denying GDI's Rule 60 Motion.

### A. Legal Framework: Reconsideration for Excusable Neglect

In deciding whether to grant reconsideration of the allowance of a claim, Bankruptcy Courts apply Bankruptcy Code § 502(j), which states: "[a] claim that has been allowed or disallowed may be reconsidered for cause." 11 U.S.C. § 502(j). "[T]he burden of establishing cause for reconsideration under 502(j) rests with the moving party." *Covert v. LVNV Funding, LLC*, 779 F.3d 242, 248 n.3 (4th Cir. 2015). Federal Rule of Civil Procedure 60 "applies in cases under the [Bankruptcy] Code[.]" Fed. R. Bankr. P. 9024; *see also In re A.H. Robins Co.*, No. 98-1019, 1998 WL 480744, at *1 (4th Cir. Aug. 6, 1998) ("Courts have read § 502(j) in conjunction with Fed. R. Civ. P. 60(b)"). Federal Rule of Civil Procedure 60(b)(1) allows courts to grant relief from a final judgment when a moving party shows "mistake, inadvertence, surprise, or excusable neglect[.]" Fed. R. Civ. P. 60(b)(1).

"[F]or purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 394 (1993). "The ordinary meaning of 'neglect' is to 'give little attention or respect' to a matter, or, closer to the point for our purposes, 'to leave undone or unattended to especially through carelessness.'" *Id.* at 388 (quoting Webster's Ninth New Collegiate Dictionary 791 (1983) (emphasis omitted)). In determining whether neglect is excusable, a court considers "the danger of prejudice to the debtor, the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the

8

movant acted in good faith." *Id.* at 395. "'Excusable neglect' is not easily demonstrated, nor was it intended to be." *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996). "'Mere dissatisfaction in hindsight with choices deliberately made by counsel is not grounds for finding the mistake, inadvertence, surprise or excusable neglect necessary to justify Rule 60(b)(1) relief.'" *Am. Lifeguard Ass'n, Inc. v. Am. Red Cross*, Nos. 92-2460, 92-2527, 93-1190, 93-1224, 1994 WL 144321, at *2 (4th Cir. Apr. 22, 1994) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 62 (2d Cir. 1986)).

### B. The Bankruptcy Court Did Not Err in Finding that GDI's Actions Did Not Constitute Negligence

The Bankruptcy Court found that "GDI's intentional choice to 'sit back and ignore the bankruptcy'... [did] not constitute neglect and, as such, cannot constitute cause for reconsideration of the Order." (ECF No. 2-24, at 8 (quoting *In re Quartercall Communs., Inc.*, No. 95-15090 (SSM), 1996 WL 910910, at *6 (Bankr. E.D. Va. May 15, 1996))). This is not error. In so finding, the Bankruptcy Court noted that "GDI was actively engaged with [Pier 1] and in frequent communications with [Pier 1] about the Lease and the Claim, until GDI learned that its Claim may not be paid." (ECF No. 2-24, at 8 (citing the parties' stipulated facts).) "At that point, GDI ceased communications with [Pier 1] for almost three years." (ECF No. 2-24, at 8.) The Bankruptcy Court observed that "[i]t was not until GDI learned through a third party that a distribution would be made to unsecured creditors that it recommenced such communication", and that "the record shows that GDI [had] made a conscious business decision that its continued participation no longer made economic sense[.]" (ECF No. 2-24, at 8.) Indeed, GDI itself concedes GDI's "ceased affirmative efforts to contact the Debtor" constituted a "decision". (ECF No. 5, at 9.)

This Court finds no error or abuse of discretion in the Bankruptcy Court's conclusion that "GDI's intentional choice to sit back and ignore the bankruptcy . . . does not constitute neglect[.]" (ECF No. 2-24, at 8 (internal quotation marks omitted).)

### C. The Bankruptcy Court Did Not Err in Finding That Even Assuming Neglect, GDI Failed to Show *Excusable* Neglect

This Court sees no error or abuse of discretion in the manner in which the Bankruptcy Court weighed the relevant factors when finding that GDI failed to show excusable neglect, even presuming neglect had occurred. The Bankruptcy Court weighed "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395. The Court will address each of the four factors in turn.

#### 1. The Bankruptcy Court Did Not Err When Finding That Granting Reconsideration Would Prejudice the Debtor

First, the Bankruptcy Court found that "[g]ranting [reconsideration] would prejudice [Pier 1] and [its] creditors." (ECF No. 2-24, at 9.) The Bankruptcy Court's Order Granting Pier 1's Claim Objection, which reduced GDI's claim to $0, "'allowed [Pier 1] to accurately calculate their outstanding liabilities to creditors . . . so that they could fund an interim distribution to general unsecured creditors." (ECF No. 2-24, at 9 (quoting *AMF Bowling Worldwide, Inc.*, 520 B.R. 185, 196 (Bankr. E.D. Va. 2014).) The Bankruptcy Court found that if it were to grant reconsideration and "allow GDI to file a late response to [Pier 1's] Claim Objection," it would undermine the finality of those deadlines and permit "hundreds of creditors who might now come forward and assert a previously time-barred defense." (ECF No. 2-24, at 9 (internal quotation marks and citation omitted).)

GDI argues that the Bankruptcy Court erred in finding the Pier 1 would be prejudiced by the granting of reconsideration, asserting that "the need for finality would not be impacted by the granting of the Rule 60 Motion because [Pier 1 is] engaged in other activities that necessitate keeping the bankruptcy estates open." (ECF No. 5, at 12.) However, the ongoing nature of the bankruptcy proceedings does not mean that granting GDI's Rule 60 Motion would not *further* prolong the proceedings. Despite GDI's contention that "there is *no* evidence in the record to support the existence of other potential similar motions, which are merely hypothetical," (ECF No. 5, at 9 (emphasis in original)), the Bankruptcy Court observed that there were "many claim reconciliation orders entered" in this case. (ECF No. 2-24, at 9.) Further, Pier 1 points out that the Claim Objection at issue "is titled the 'Twentieth' because nineteen other objections came before it, each an omnibus objection objecting to several claims." (ECF No. 7, at 20.)[7] Thus, the Bankruptcy Court found that if it were to grant GDI's request for reconsideration of the Claim Objection, "'it is difficult to see on what basis the court could deny the same relief to dozens or perhaps hundreds of creditors who might now come forward and assert a previously' time-barred defense." (ECF No. 2-20, at 9 (quoting *In re AMF Bowling Worldwide, Inc.*, 520 B.R. at 196).[8]

The Bankruptcy Court's finding that prejudice would inure to Pier 1 if it granted GDI's Rule 60 Motion does not involve "'imagined or hypothetical harm'", but represents "'a conclusion based on facts in evidence.'" *In re Roman Catholic Diocese of Syracuse, NY*, No. 20-30663, 2024 WL 535370, at *3 (Bankr. N.D.N.Y. Feb. 9, 2024) (quoting *In re Enron Corp.*, 419

---

[7] The nineteen other objections are listed on the Bankruptcy Court docket. (ECF No. 2-1.)

[8] The Bankruptcy Court also found if it were to grant GDI's Rule 60 Motion, "[a]t a minimum, it would cause [Pier 1] to incur additional administrative expense and would delay any further interim or final distributions." (ECF No. 2-24, at 10.)

11

F.3d 115, 131 (2d Cir. 2005)). Thus, the Bankruptcy Court did not err or abuse its discretion when finding that "the first [*Pioneer*] factor weighs against granting [GDI's Rule 60] Motion." (ECF No. 2-24, at 10.)

### 2. The Bankruptcy Court Did Not Err When Finding That the Length of the Delay Weighed Against Granting GDI's Motion

Second, the Bankruptcy Court determined that "the length of the delay and its impact on efficient court administration [] weighs against granting [GDI's Rule 60] Motion." (ECF No. 2-24, at 10.) It noted that "[n]ine months passed between the filing of [Pier 1's] Claim Objection and [GDI's] filing of the [Rule 60] Motion" and that "GDI had been given four opportunities to note [its] opposition." (ECF No. 2-24, at 10.) The Bankruptcy Court found that the length of the delay "'stands in stark contrast to cases where courts have found the length of delay to be acceptable.'" (ECF No. 2-24, at 10 (quoting *In re AMF Bowling Worldwide, Inc.*, 520 B.R. at 197) (comparing case in which court found delay of 6 days acceptable to case in which court found delay of nearly seven months unacceptable)). This is not error.

GDI argues that the Bankruptcy Court erred in calculating the delay "as the time from the filing of [Pier 1's Claim] Objection (April 2023) to the filing of [GDI's] Rule 60 Motion (January 2024)." (ECF No. 5, at 15.) It posits that this delay cannot "be fairly attributed to GDI" because "GDI was unaware of [Pier 1's Claim] Objection in April 2023[.]" (ECF No. 5, at 15, 17 (emphasis omitted).) However, this argument goes toward the third *Pioneer* factor—the reasonableness of the delay—not the length of the delay. GDI concedes that it never filed a response to Pier 1's Claim Objection, which constitutes a deliberate decision to let the case lay fallow. (ECF No. 2-22, ¶ 14.) Purported justifications for this delay do not alter its length.

Thus, the Bankruptcy Court did not err or abuse its discretion in finding that the second Pioneer factor weighed against granting GDI's Rule 60 Motion. (ECF No. 2-24, at 10.)

### 3. The Bankruptcy Court Did Not Err When Finding That the Delay Was Within GDI's Reasonable Control

Third, the Bankruptcy Court concluded that "the delay was well within GDI's reasonable control and, as such, [] the third [*Pioneer*] factor is not satisfied in the case at bar." (ECF No. 2-24, at 10.) In support of its conclusion, the Bankruptcy Court noted that the parties stipulated that Pier 1 or its agent "mailed via first-class mail, postage prepaid, (i) the Claim Objection, (ii) the Order, (iii) the Notice of Allowed Claims, and (iv) the Resolved Claims Notice to GDI's Service Address." (ECF No. 2-24, at 10; *see also* ECF No. 2-22 ¶¶ 13, 16, 19, 21.) GDI did not contest that Pier 1's "service [was] sufficient under the Bankruptcy Rules." (ECF No. 2-24, at 10–11 (citing Fed. R. Bankr. P. 3007(a)(2)(A)).) Rather, GDI hangs its hat on its bald contention that it never received any of the documents, arguing that its delay was reasonable because it was "unaware" of Pier 1's Claim Objection. (ECF No. 5, at 15 (emphasis omitted).) However, the Bankruptcy Court found that mere denial that a properly served notice was received 'is arguably insufficient to rebut the presumption of receipt.'" (ECF No 2-24, at 11 (quoting *In re Birdneck Apartment Assocs., II, L.P.*, 152 B.R. 65, 67 n.5 (Bankr. E.D. Va. 1993)).)

Most importantly, the Bankruptcy Court noted that GDI declined to avail itself of "other options" to receive notices about the bankruptcy proceedings, including "free electronic notifications" or "hir[ing] counsel to monitor the docket for activity concerning its Claim." (ECF No. 2-24, at 12.) The fact that GDI made a business decision not to pursue these options does not change the fact that "the delay was well within GDI's reasonable control[.]" (ECF No. 2-24, at 10.)

Therefore, the Bankruptcy Court did not err or abuse its discretion in finding that "the third [*Pioneer*] factor is not satisfied." (ECF No. 2-24, at 10.)

### 4. The Bankruptcy Court Did Not Err When Finding That GDI Failed to Establish Good Faith

Fourth, the Bankruptcy Court found that while it "d[id] not find that GDI proceeded in bad faith, GDI did not meet its burden on this element, as it simply offered no evidence of its good faith." (ECF No. 2-24, at 12.) GDI argues that Pier 1 "stipulated to GDI's good faith." (ECF No. 5, at 18 (citing ECF No. 6-4, at 126) (emphasis omitted).) In reality, Pier 1 wrote in its Objection to Motion for Relief from Order Granting Omnibus Objection that it "d[id] not contest that [GDI] does not seem to have nefarious reasons for seeking the relief sought in the Motion." (ECF No. 6-4, at 126.) This Court does not find that GDI's business decision to stop participating in the litigation, or its decision to try to rejoin it, suggests nefarious conduct. But this acknowledgment does not establish good faith, and the Bankruptcy Court correctly observed that "the parties did not provide evidence addressing the good faith standard set forth in *Pioneer*." (ECF No. 2-24, at 12.)

Therefore, the Bankruptcy Court did not err or abuse its discretion in finding that GDI "did not meet its burden" of proving good faith. (ECF No. 2-24, at 12.)

### IV. Conclusion

For the foregoing reasons, the Court will AFFIRM the Bankruptcy Court's March 11, 2024 Memorandum Opinion and Order denying GDI's Rule 60 Motion. (ECF Nos. 2-20; 2-24.)

An appropriate Order shall issue.

Date: 12/20/24  
Richmond, Virginia

/s/  
M. Hannah Lauck  
United States District Judge